Thomas E. Mountjoy Greene County Prosecuting Attorney Greene County Courthouse Springfield, Missouri 65802
Dear Mr. Mountjoy:
This opinion letter is in response to your question asking:
 May funds generated pursuant to Sec. 190.300 through 190.310, telephone emergency service, be utilized for the acquisition of functions other than telephone equipment such as radios, dispatching services, dispatching personnel, dispatching buildings and other related dispatching functions.
Along with your question, you state:
 Recently Greene County, Missouri voters paid taxes pursuant to Sec. 190.305, R.S.Mo. which provides that the tax shall be utilized for the "operation of emergency telephone service." An issue has arisen as to whether or not the dispatching of emergency equipment via radio is a part of an emergency telephone system. Sec. 190.325 provides for a central dispatch for emergency systems. This section, which does not apply to Greene County, however, suggests that there is a separate function and available tax which would be incurred for that purpose.
Based on additional information provided to us, we understand a person or persons will be designated as the emergency telephone system operator to receive incoming calls made by persons dialing "911." This "911" operator will then report the emergency to the appropriate emergency "dispatching personnel" of a particular local government such as, for example, the dispatcher of a particular city's police department or the dispatcher of a particular fire protection district.
With regard to your question, we understand the "radios" about which you inquire are the radios used by the particular, local government responding to the "911" emergency telephone call. The "radios" about which you inquire are, for example, the radio used by the dispatcher of a particular city's police department to contact a police car or police officer — the radio located at that city's dispatching office, the radio located in a police car of that city, and the radio carried by a city police officer.
We understand the "dispatching personnel" to which you refer is the dispatcher of the particular local government responding to the "911" emergency telephone call. For example, the "dispatching personnel" might be the dispatcher for the police department of a particular city or the dispatcher for a particular fire protection district.
With regard to "dispatching buildings" we understand you are not referring to the building housing the emergency telephone system "911" operator but instead are referring to the building housing the dispatching personnel of a particular local government. For example, the "dispatching building" to which you refer might be a building in which the dispatching personnel for a particular city's police department is located or the building in which the dispatching personnel for a particular fire protection district is located. The "dispatching building" which is the subject of your question is a different building than that in which the emergency telephone system "911" operator is located.
The emergency telephone service statutes appear in Sections190.300 to 190.320, RSMo.[1] Section 190.300, RSMo 1986, provides:
 190.300. Definitions. — Unless the context clearly requires otherwise, the following terms and phrases mean:
 (1) "Emergency telephone service", a telephone system utilizing a single three digit number "911" for reporting police, fire, medical or other emergency situations;
 (2) "Emergency telephone tax", a tax to finance the operation of emergency telephone service;
 (3) "Exchange access facilities", all facilities provided by the service supplier for local telephone exchange access to a service user;
 (4) "Governing body", the legislative body for a city, county or city not within a county;
 (5) "Person", any individual, firm, partnership, copartnership, joint venture, association, cooperative organization, corporation, municipal or private, and whether organized for profit or not, state, county, political subdivision, state department, commission, board, bureau or fraternal organization, estate, trust, business or common law trust, receiver, assignee for the benefit of creditors, trustee or trustee in bankruptcy, or any other service user;
 (6) "Public agency", any city, county, city not within a county, municipal corporation, public district or public authority located in whole or in part within this state which provides or has authority to provide for fighting, law enforcement, ambulance, emergency medical, or other emergency services;
 (7) "Service supplier", any person providing exchange telephone services to any service user in this state;
 (8) "Service user", any person, not otherwise exempt from taxation, who is provided exchange telephone service in this state;
 (9) "Tariff rate", the rate or rates billed by a service supplier to a service user as stated in the service supplier's tariffs, approved by the Missouri public service commission which represent the service supplier's recurring charges for exchange access facilities or their equivalent, exclusive of all taxes, fees, licenses or similar charges whatsoever. [Emphasis added.]
Section 190.305, RSMo Supp. 1991, provides:
 190.305. Emergency telephone service may be provided — tax levy authorized — time limitation on tax — rate — collection. — 1. In addition to its other powers for the protection of the public health, a governing body may provide for the operation of an emergency telephone service and may pay for it by levying an emergency telephone tax for such service in those portions of the governing body's jurisdiction for which emergency telephone service has been contracted. The governing body may do such other acts as are expedient for the protection and preservation of the public health and are necessary for the operation of an emergency telephone system. The governing body is hereby authorized to levy the tax in an amount not to exceed fifteen percent of the tariffed local service rate, as defined in section 190.300, or seventy-five cents per access line per month, whichever is greater, except as provided in sections 190.325 to 190.329, in those portions of the governing body's jurisdiction for which emergency telephone service has been contracted.
 2. Such tax may be levied for no longer than three years, after which the governing body may continue to renew such levy for no longer than three years at a time. The tax shall be utilized to pay for the operation of emergency telephone service as deemed appropriate by the governing body, and may be levied at any time subsequent to execution of a contract with the provider of such service at the discretion of the governing body, but collection of such tax shall not begin prior to two years before operation of the emergency telephone service.
 3. Such tax shall be levied only upon the tariff rate. No tax shall be imposed upon more than one hundred exchange access facilities or their equivalent per person per location.
 4. Every billed service user is liable for the tax until it has been paid to the service supplier.
 5. The duty to collect the tax from a service user shall commence at such time as specified by the governing body in accordance with the provisions of sections 190.300 to 190.320. The tax required to be collected by the service supplier shall be added to and may be stated separately in the billings to the service user.
 6. Nothing in this section imposes any obligation upon a service supplier to take any legal action to enforce the collection of the tax imposed by this section. The service supplier shall provide the governing body with a list of amounts uncollected along with the names and addresses of the service users refusing to pay the tax imposed by this section, if any.
 7. The tax imposed by this section shall be collected insofar as practicable at the same time as, and along with, the charges for the tariff rate in accordance with the regular billing practice of the service supplier. The tariff rates determined by or stated on the billing of the service supplier are presumed to be correct if such charges were made in accordance with the service supplier's business practices. The presumption may be rebutted by evidence which establishes that an incorrect tariff rate was charged. [Emphasis added.]
Legislative intent should be ascertained from the language used, considering words in their plain and ordinary meaning.Wolff Shoe Company v. Director of Revenue, 762 S.W.2d 29, 31
(Mo. banc 1988). The General Assembly has defined "emergency telephone service" as "a telephone system utilizing a single three digit number `911' for reporting police, fire, medical or other emergency situations." [Emphasis added.] Section190.300(1). Section 190.305.2 provides that the tax authorized by Sections 190.300 to 190.320 "shall be utilized to pay forthe operation of emergency telephone service as deemed appropriate by the governing body." [Emphasis added.] Although "as deemed appropriate by the governing body" provides some discretion to the governing body as to the purposes for which the tax revenue may be used, the purposes are still limited by the words of the statute.
Section 190.300(1) refers to a telephone system for "reporting" emergency situations. Webster's New World Dictionary, Second College Edition, defines "report" as "to give an account of . . . give information about . . . recount." Your question refers to "dispatching." The same dictionary defines "dispatch" as "to send off or out promptly". Based on the foregoing, we conclude that "reporting" as used in Section190.300(1) is a separate function from "dispatching."[2]
We must examine your question concerning radios, dispatching personnel and dispatching buildings in the context of the applicable statutory provisions.
1. Radios — The radios about which you inquire are, for example, radios used by the dispatcher of a particular city police department to contact a police car or police officer, both the radio located at the city's dispatching office and in a city police car or carried by a city police officer. Such radios are not included in the definition of "emergency telephone service" in Section 190.300(1) and would not be a permissible use of the tax revenue.
2. Dispatching personnel — The dispatching personnel about which you inquire are, for example, the dispatcher for a particular city's police department. Such person is the one to whom the emergency telephone system "911" operator reports the emergency when the emergency is one to which that city's police department is the appropriate entity to respond. Such "dispatching personnel" of a local government are not included in the definition of "emergency telephone service" in Section190.300(1) and would not be a permissible use of the tax revenue.
3. Dispatching buildings — The buildings about which you inquire are where dispatching personnel of a particular local government are located and not where the emergency telephone service "911" operator is located. Such a building is not included in the definition of "emergency telephone service" in Section 190.300(1) and would not be a permissible use of the tax revenue.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
[1] Because your question relates to Greene County, Sections190.325 to 190.329, RSMo Supp. 1991, which apply to "any county of the first class without a charter form of government which adjoins a first class county with a charter form of government and two second class counties," are not applicable.
[2] In the factual situation you present, the emergency telephone system "911" operator does not dispatch emergency vehicles or personnel but instead reports the emergency to the appropriate emergency "dispatching personnel" of a particular local government such as, for example, the dispatcher of a city police department or the dispatcher of a fire protection district. Our comments in this opinion letter are directed at the particular factual situation you have presented.